## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.

JOHNNY-LEE PRESTON BURK,

                    Defendant.

Case No. 3:23-cr-00078-SLG-MMS

### ORDER RE MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR HEARING

Before the Court at Docket 78 is Defendant Johnny-Lee Burk's Motion to Suppress Evidence.[1] The Government responded in opposition at Docket 80. At Docket 86, Mr. Burk requested an evidentiary hearing on his Motion to Suppress Evidence. While the Government did not respond separately to Mr. Burk's request for an evidentiary hearing, it asserted in its response at Docket 80 that a hearing on the motion was not warranted.[2]

### BACKGROUND

On May 23, 2023, at around 10:03 a.m., a citizen called 911 to report watching a burglary of her apartment in Wasilla, Alaska, in real time via her security

---

[1] Mr. Burk also filed a 55-page exhibit on the various uses of ammunition cans in support of his motion to suppress. Docket 87; Docket 87-1.

[2] Docket 80 at 10-11.

cameras.[3]  Wasilla Police Department ("WPD") officers and Alaska State Troopers ("AST") responded to the burglary in progress.[4]  Dispatch relayed the following information regarding the burglary to the responding WPD officers and Troopers:

- One suspect was pulling into the backyard of the home in a red Dodge car[5];

- One suspect was wearing a red shirt under a jacket[6];

- The citizen reported that a male wearing a black hoodie and blue gloves was leaving with weapons[7]; and

- When an officer asked if there was a vehicle associated with the suspect, dispatch responded, "a red Dodge car."[8]

Video footage from a WPD patrol car shows that, when the first two WPD officers arrived at the citizen's address, which was just moments after they were notified that the suspect was associated with "a red Dodge car," a red Dodge car made a quick right turn out of the apartment complex.[9]  One WPD officer had

---

[3] Docket 80-3 at 6.

[4] Docket 80-3 at 6.

[5] Docket 69-1 at 03:27-03:42 (Dispatch Audio).

[6] Docket 69-1 at 04:32-04:35.

[7] Docket 69-1 at 05:47-06:02 (stating that the male had a "10-32"); *see also* Docket 78-1 at 1 (noting that a "10-32" is AST code for "Weapons Involved").

[8] Docket 69-1 at 06:23-06:32.

[9] Docket 80-4 at 01:40-02:45.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 2 of 14

proceeded on foot and attempted to stop the car, but had to move out of the way when the car accelerated towards him.[10]  The other WPD officer pulled the patrol car in front of the Dodge to stop it, and an AST vehicle pulled up behind the Dodge as it began reversing away from the WPD vehicle.[11]  With guns drawn, the officers secured three individuals who were in the car, one of whom was Mr. Burk, who was wearing a blue hooded sweatshirt with a red shirt underneath.[12]  One officer spoke to a second suspect who had waived his *Miranda* rights who stated that the three men had taken "several 'camping bags' and hard plastic cases."[13]  The same officer reported that, "[i]n plain view in [the] car, [the officer] saw several bags that appeared to contain camping gear, a flatscreen television and several black plastic cases, like what would contain firearms."[14]  Mr. Burk alleges that, after officers stopped the Dodge, they "conducted a warrantless search of the vehicle, significantly altering the placement of the items in the car, and allowing [the citizen] to make a plain view identification of the items in the vehicle that were allegedly stolen from her apartment."[15]

---

[10] Docket 80-3 at 6 (reporting that the driver of the Dodge car accelerated towards an officer in the homeowner's driveway who yelled "Stop" twice).

[11] Docket 80-4 at 02:40-02:57; Docket 80-3 at 7.

[12] Docket 80-4 at 05:02-05:30 (showing an individual exiting the front right passenger side of the red Dodge car); Docket 80-3 at 6-7 (noting that there were three men involved and reporting that the individual exiting the front right seat of the red Dodge was Mr. Burk).

[13] Docket 80-3 at 6.

[14] Docket 80-3 at 7.

[15] Docket 78 at 2.  While Mr. Burk maintains that the officers significantly altered the placement

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 3 of 14

After the incident, one officer reviewed the security footage from the citizen's security cameras, which showed that the suspects had departed her home with a "long plastic case . . . consistant [sic] with a gun case," another black case, a camouflage backpack, and a flat screen TV.[16] Officers then obtained a search warrant to search the car, which had been impounded.[17] The warrant authorized a search at the impound yard of "a red 2016 Dodge Journey . . . containing" a list of several guns, ammunition, camping gear, a flatscreen TV, and cell phones.[18] The warrant stated that the magistrate judge had probable cause to believe that the property listed was evidence of burglary and theft, tended to show that Mr. Burk and the other two suspects committed those crimes, and was stolen or embezzled property.[19] The officers executed the search warrant and recovered all of the items

---

of the items in the car, the Court's review of the video footage from the patrol car leads to a different conclusion. Any displacement of items in the car appears minimal, and the officers' actions appear consistent with one officer's report that they "cleared the vehicle of any hidden occupants." Docket 78-1 at 12; Docket 80-4 at 08:37-10:00 (Stream 2) (showing officers approaching car with firearms raised after the three suspects had exited the vehicle, looking into the car from all doors with firearms still raised, and walking away after finding no other occupants, but not showing that officers significantly moved any items in the car), 17:46-18:20 (showing another officer looking into the car from the various open doors, but not appearing to move anything), 26:42-27:37 (showing officer looking into car and appearing to take a cell phone out of the car, but not appearing to move any other items). One officer stated that one suspect "was in the backseat with the stolen items stacked around him," but the video footage does not show officers removing or significantly altering anything in the backseat. Docket 80-3 at 6.

[16] Docket 80-3 at 5-6 (report by Officer Steward on May 24, 2023).

[17] Docket 78-1 at 13-17 (showing search warrant was issued on May 25, 2023).

[18] Docket 78-1 at 13.

[19] Docket 78-1 at 14.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 4 of 14

Case 3:23-cr-00078-SLG-MMS   Document 99   Filed 06/03/24   Page 4 of 14

listed in the warrant from the car.[20]

Mr. Burk asserts that, after he was arrested, the government obtained his "personal jail calls that he made to his friends and family . . . without a Warrant or Subpeona [sic]."[21]

## DISCUSSION

### I.    Motion to Suppress Evidence

In his motion to suppress, Mr. Burk makes six arguments: (1) Wasilla police officers lacked reasonable suspicion to stop the suspect vehicle; (2) even if there was reasonable suspicion, "the information present before officers was insufficient to stop the vehicle here"; (3) the information "that a man was leaving the scene with a gun in a gun case" did not justify the stop; (4) the stop, where officers used drawn guns and surrounded the vehicle, "actually amounted to an arrest that was unsupported by Probable Cause or Exigent Circumstances"; (5) even if the initial stop was justified, the subsequent search done pursuant to a search warrant exceeded the scope of that warrant; and (6) the jail calls involving Mr. Burk were unlawfully obtained without a search warrant.[22]  Mr. Burk thus contends that all of the evidence obtained from the vehicle stop and his jail calls must be suppressed.[23]

---

[20] Docket 78-1 at 17.

[21] Docket 78 at 3.

[22] Docket 78 at 4-21.

[23] Docket 78 at 3-4.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 5 of 14

Case 3:23-cr-00078-SLG-MMS   Document 99   Filed 06/03/24   Page 5 of 14

The Court addresses these arguments in turn.

### a. Arguments 1-4

While Mr. Burk maintains in his first four arguments that Wasilla police officers and AST lacked reasonable suspicion or probable cause to stop the vehicle, the Court disagrees. Rather, the Court finds that the officers had enough information rising to the level of probable cause to stop the vehicle and arrest Mr. Burk and the other individuals in the vehicle.

A warrantless arrest is permitted when an officer has probable cause to believe that a person has committed a felony offense, or that a person has committed a misdemeanor in the officer's presence.[24] "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."[25] Stated another way, probable cause exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime."[26] "Headlong flight— wherever it occurs—is the consummate act of evasion: It is not necessarily

---

[24] *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citations omitted).

[25] *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

[26] *Lopez*, 482 F.3d at 1072 (alteration in original) (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)).

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 6 of 14

Case 3:23-cr-00078-SLG-MMS    Document 99    Filed 06/03/24    Page 6 of 14

indicative of wrongdoing, but it is certainly suggestive of such."[27]

Here, police officers responded to a dispatch report of an apartment burglary that was being relayed in real time by the apartment's tenant, who was watching her apartment through her security cameras. Dispatch informed the officers that the suspects had left the tenant's unit with weapons and were in a red Dodge car, which the responding officers shortly thereafter observed exiting from the tenant's apartment's parking area and "leaving at a high rate of speed."[28] The driver of the Dodge ignored police commands to stop and attempted to evade the officers.[29] Based on the totality of the circumstances, the Court finds that "a prudent person would have concluded that there was a fair probability that [the individuals in the car] had committed a crime"—the felony offense of burglary.[30]

Moreover, "when officers suspect a burglary in progress, they have no idea who might be inside [a home] and may reasonably assume that the suspects will, if confronted, flee or offer armed resistance."[31] "So long as the officers have

---

[27] *See United States v. Smith*, 633 F.3d 889, 894 (9th Cir. 2011) (citation omitted) (holding that defendant's "headlong flight for no other reason than to evade" a police officer in a high-crime neighborhood was enough to engender reasonable suspicion).

[28] Docket 78-1 at 12.

[29] Docket 80-3 at 6 (reporting that the driver of the Dodge car accelerated towards an officer in the homeowner's driveway who yelled "Stop" twice, and that when the car was blocked by marked patrol vehicles, the driver "shifted the car into reverse and attempted to back away from the marked units" until an AST vehicle blocked the Dodge from behind).

[30] *Lopez*, 482 F.3d at 1072 (citation omitted).

[31] *Frunz v. City of Tacoma*, 468 F.3d 1141, 1145 (9th Cir. 2006).

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 7 of 14

established probable cause for a burglary, '[i]n such exigent circumstances, the police are entitled to enter immediately, using all appropriate force.'"[32]  While the police officers here did not encounter Mr. Burk and the other suspects inside the apartment unit itself, they confronted the suspects immediately after the suspects had left the unit and were fleeing in a "readily mobile" vehicle.[33]  An exigency is created by the mere fact that a vehicle is "readily mobile," and no separate exigency is required under this "automobile exception."[34]  Just as officers may "have no idea who might be inside [a home] and may reasonably assume that the suspects will . . . flee or offer armed resistance" if confronted inside a home during a burglary in progress, the Court finds that the same logic applies to confronting suspects in a getaway vehicle leaving the scene of the burglary.[35]  Officers may not know who might be inside the vehicle, and the officers "may reasonably assume that the suspects will . . . flee or offer armed resistance" when there is probable cause to believe they are in the act of fleeing with the burgled goods.[36]

---

[32] *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Frunz*, 468 F.3d at 1145).

[33] *See Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (citation omitted).  Given that the officers stopped the Dodge as it was leaving the site of the burglary—and the video footage from the police vehicles do not indicate that the Dodge was made immobile in any way—the "readily mobile" requirement is met here.

[34] *Dyson*, 527 U.S. at 466-67 (citations omitted).  However, to conduct a search, officers must still "have probable cause to believe that the vehicle contains contraband."  *United States v. Ross*, 456 U.S. 798, 808 (1982).

[35] *See Frunz*, 468 F.3d at 1145.

[36] *Frunz*, 468 F.3d at 1145.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 8 of 14

Case 3:23-cr-00078-SLG-MMS   Document 99   Filed 06/03/24   Page 8 of 14

In addition, officers may search a vehicle incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."[37] Here, the officers made a lawful arrest of Mr. Burk for a reported home burglary and could reasonably believe that any stolen items would be found in the car that Mr. Burk was using in association with the burglary. Therefore, even if the officers' movement of items in the car constituted a warrantless search as Mr. Burk claims,[38] such a search was authorized under the circumstances.

Accordingly, the Court finds that the officers had probable cause to both stop the vehicle with guns drawn and make warrantless arrests of the individuals in the car.[39] As such, Mr. Burk's arguments here, which are premised on a lack of reasonable suspicion, insufficient information, and lack of probable cause, are all unavailing.

### b. Argument 5

Mr. Burk contends that, even if the stop was justified, the subsequent search of the vehicle done pursuant to the search warrant exceeded the scope of that warrant.[40] Mr. Burk maintains that the search warrant—which authorized a search in the Alaska State Trooper Secure Impound Yard for "[a] red 2016 Dodge Journey

---

[37] *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004)).

[38] *See* Docket 78 at 2.

[39] *See Pringle*, 540 U.S. at 370 (citations omitted).

[40] Docket 78 at 15.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 9 of 14

bearing AK Plate JPS829 containing" a list of guns, ammunition, and other items—only authorized a search of "the impound lot for the vehicle which contains all the items listed, but . . . [not a] search [inside of] the vehicle itself for the items."[41] Mr. Burk further asserts that the search warrant did not authorize the officers to open "the containers located in that vehicle," which allegedly contained guns and ammunition.[42]

Mr. Burk's argument here is unpersuasive as it flyspecks the formatting of a valid search warrant. "The test for determining the validity of a warrant is whether the warrant describes the place to be searched with 'sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort,' and whether any reasonable probability exists that the officers may mistakenly search another premise."[43] The Court finds that the particularity requirement is met here: the search warrant clearly stated the specific items to be seized and that they would be found in the red Dodge car at the AST impound yard.[44] Mr. Burk further asserts that the officers were not authorized to open the

---

[41] Docket 78 at 16.

[42] Docket 78 at 16-17.

[43] *United States v. Mann*, 389 F.3d 869, 876 (9th Cir. 2004) (citation omitted).

[44] There is also no evidence that the magistrate judge receiving the executed search warrant took issue with the items seized and inventoried, which controverts Mr. Burk's argument that what the search warrant was really for was the car, not the items in the car. *See* Docket 78-1 at 13-17.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 10 of 14

Case 3:23-cr-00078-SLG-MMS    Document 99    Filed 06/03/24    Page 10 of 14

containers located in the vehicle, but this argument is also unavailing.[45]  If officers have probable cause to believe that "the object of the search" may be found in certain places, including containers, then they have the authority to search such containers.[46]  "Probable cause 'merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime.'"[47]  Here, one officer reported seeing in the car "several bags that appeared to contain camping gear, a flatscreen television and several black plastic cases, like what would contain firearms."[48]  The search warrant authorized the officers to search for firearms, ammunition, and camping gear; accordingly, it was reasonable that the officers searched the containers in the car that looked like they would contain such items.[49]

The Government contends that Mr. Burk lacks standing "to challenge the search of a vehicle that is not his nor the search of containers that belong to the

---

[45] Docket 78 at 16-18.

[46] "The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. . . . The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted.  Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found."  *Ross*, 456 U.S. at 823-24.

[47] *United States v. Borowy*, 595 F.3d 1045, 1049 (9th Cir. 2010) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

[48] Docket 80-3 at 7.

[49] Docket 78-1 at 13.

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 11 of 14

Case 3:23-cr-00078-SLG-MMS   Document 99   Filed 06/03/24   Page 11 of 14

victim."[50]   However, because the Court finds that the search warrant and subsequent search of the vehicle are valid, the Court does not reach the Government's standing argument here.

### c. Argument 6

Finally, Mr. Burk asserts that his jail calls were unlawfully obtained without a search warrant.[51]   However, "any expectation of privacy in outbound calls from prison is not objectively reasonable and . . . the Fourth Amendment is therefore not triggered by the routine taping of such calls."[52]   The Court thus denies Mr. Burk's motion to suppress the jail calls.

## II.   Motion for Evidentiary Hearing

Mr. Burk requests an evidentiary hearing on his motion to suppress in order to cross-examine all of the officers who were present during the stop and to present other evidence, such as "pictures taken during the stop of the vehicle before it's [sic] siezure [sic] and during the execution of the search warrant."[53]   "An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."[54]   Where a defendant is caught red-

---

[50] Docket 80 at 7.

[51] Docket 78 at 19.

[52] *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996).

[53] Docket 86 at 1.

[54] *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citations omitted).

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 12 of 14

handed and the dispatch audio and video footage of the event establish probable cause to arrest, a district court is not required to hold an evidentiary hearing.[55] Mr. Burk was caught "red-handed" in this burglary, and while he disputes the existence of reasonable suspicion or probable cause for the officers to stop him, he does not dispute the events as presented or the police officers' response.[56] In addition, photos of the vehicle after the suspects were stopped and any subjective beliefs that might be elicited in examination of the police officers are unnecessary to the determination here.[57] Rather, the Court may and does rely on the facts as depicted in the dispatch audio and patrol car footage to find that the officers here had probable cause to arrest Mr. Burk and the other individuals with him.[58] Accordingly, the Court finds that there is no genuine factual dispute and denies Mr. Burk's motion for an evidentiary hearing.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Mr. Burk's Motion to Suppress Evidence at Docket 78 is DENIED, and that Mr. Burk's Request for Evidence

---

[55] *See United States v. Batiste*, 868 F.2d 1089, 1092-93 (9th Cir. 1989).

[56] *See generally* Docket 78.

[57] *See Lopez*, 482 F.3d at 1072 (holding that "[p]robable cause is an objective standard," and that "arresting officers' subjective intention . . . is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes").

[58] *Cf. Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (holding that, where a witness's version of events is "utterly discredited" by the record, appellate court should have relied on facts as depicted in video footage of the events rather than the witness's account to determine whether there was a genuine dispute of material fact).

Case No. 3:23-cr-00078-SLG-MMS, *United States v. Burk*
Order re Motion to Suppress Evidence and Request for Hearing
Page 13 of 14

Hearing for His Motion to Suppress at Docket 86 is DENIED.

DATED this 3rd day of June, 2024, at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:23-cr-00078-SLG-MMS, _United States v. Burk_
Order re Motion to Suppress Evidence and Request for Hearing
Page 14 of 14

Case 3:23-cr-00078-SLG-MMS   Document 99   Filed 06/03/24   Page 14 of 14